IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION
CIVIL ACTION NO.

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| CATIE FOOD SYSTEMS, INC. ) | **JURY TRIAL DEMAND** |
| d/b/a WENDY'S RESTAURANT, ) | |
| ) | |
| Defendant. ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex, female and to provide appropriate relief to Robin Minter ("Minter"), Mary Fairweather ("Fairweather"), Nancy Yager ("Yager"), and other similarly situated female employees who were adversely affected by such practices. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "EEOC or the "Commission"), alleges that defendant Catie Food Systems, Inc. d/b/a Wendy's Restaurant ("Defendant"), subjected Minter, Fairweather, Yager, and other similarly situated female employees to sexual harassment and a sexually hostile work environment because of their sex, female.

JURISDICTION AND VENUE

1.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Virginia, Lynchburg Division.

## PARTIES

3. Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a Virginia corporation doing business in the state of Virginia and in Bedford County and has continuously had at least fifteen employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, a former employee of Defendant filed a charge of employment discrimination with the Commission alleging violations of Title VII by Defendant, including that Defendant subjected her to sexual harassment based on sex, female. The Commission investigated the allegation and thereafter issued a letter of determination finding that there was reasonable cause to believe that the complainant as well as

other similarly situated female employees, were subjected to sexual harassment in violation of Title VII. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. From around October 2008 until at least April 2009, Defendant engaged in unlawful employment practices at its Wendy's restaurant located in Hardy, Virginia (hereafter "the restaurant"), in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1). More specifically, Defendant subjected its female employees to sexual harassment and a sexually hostile work environment created by the restaurant's store manager, who was the direct supervisor of the restaurant's employees.

8. Claimant Robin Minter was hired as a crew member at the restaurant in January 2009. On the day that she was hired, Defendant's male store manager at the restaurant commented to Minter that his practice was to hire "pretty girls" to work in the restaurant. Beginning approximately two weeks after her hire and continuing until around April 2009 the store manager subjected Minter to additional unwelcome sexual conduct because of her sex, female, on a daily or almost daily basis.

9. The unwelcome sexual conduct that the store manager subjected Minter to was severe or pervasive. The conduct included but was not limited to the following: the store manager made comments to Minter such as "I only hire pretty girls" and "I like the tight black pants you are wearing; they show your butt really well." The store manager also asked Minter to "suck [his] dick" and asked her to wear her shirt with the buttons undone so he could see her "boobs." In one incident while Minter was putting lip balm on her lips, the store manager commented that Minter's lips were nice enough to "give [him] a blow job." The store manager also told Minter that he would give her a day off if she would meet him somewhere so that the two could have sex.

10. The store manager also subjected Minter to sexually offensive touching, including but not limited to the following: approximately forty to fifty times during Minter's employment, the store manager slapped Minter on her buttocks; on at least three occasions the store manager grabbed Minter's breasts; and on several occasions, the store manager brushed his genitals against Minter's buttocks.

11. Minter was offended by the store manager's conduct described above and asked him to stop it. Minter also reminded the store manager that she was married to let him know that she was not interested in his sexual advances. Moreover, Minter complained to her shift manager about the store manager's sexually offensive conduct. Despite Minter's complaint, the store manager continued to subject Minter to sexually offensive comments and touching.

12. Claimant Mary Fairweather was hired as a crew member at the restaurant around May 2008. From around October 2008 until around April 2009 the store manager subjected Fairweather to unwelcome sexual conduct because of her sex, female, on a daily or almost daily basis.

13. The unwelcome sexual conduct that the store manager subjected Fairweather to was severe or pervasive. The conduct included but was not limited to the following: the store manager made comments to Fairweather that his penis was erect, while sometimes also commenting that he and his wife did not have sex. The store manager also made comments to Fairweather about the size of her breasts. On one occasion, the store manager pulled money out of his pocket and gave it to Fairweather and told her to "get a hotel" so that he could meet her later that night. Often Fairweather would catch the store manager staring at her breasts. Fairweather also would hear the store manager talking with male crew members about the

breasts and buttocks of female applicants. Additionally, the store manager would rub up against Fairweather's breasts.

14. Fairweather was offended by and objected to the store manager's conduct described above. Fairweather often told the store manager to stop rubbing up against her breasts. Fairweather also complained to her shift manager about the store manager's sexually offensive conduct. Despite Fairweather's complaint, the store manager continued to subject Fairweather to sexually offensive comments and touching.

15. Claimant Nancy Yager worked at the restaurant as a crew member from June 2007 until around October 2008, when she was made a shift manager. Yager worked as a shift manager at the restaurant from around October 2008 until around June 2010. From around November 2008 until around April 2009 the store manager subjected Yager to unwelcome sexual conduct because of her sex, female approximately three or more times per week.

16. The unwelcome sexual conduct that the store manager subjected Yager to was severe or pervasive. The conduct included but was not limited to the following: the store manager would make "mmmm mmmm mmmm" sounds while moving his eyes up and down Yager's body and resting his eyes on Yager's breasts or buttocks for a couple of seconds. The store manager would also say "nice" as he stared at Yager's buttocks and would comment to Yager about Yager's or other women's breasts or buttocks.. Whenever Yager or another female employee bent over to pick something up in front of the store manager, he would say, to them something like "while you are down there …." inferring that he was asking them to perform oral sex on him. The store manager would sometimes comment to Yager, while looking at a female employee, that he would like to "tap that," meaning have sexual intercourse with the female

employee. On one occasion around March 2009, the store manager offered Yager two hundred dollars ($200), to go to a hotel and have sex with him.

17. The store manager also subjected Yager to unwanted touching of her breasts and buttocks. On several occasions, the store manager reached around Yager and grazed his arm against her breast, and on at least one occasion the store manager slid his hand over Yager's buttocks.

18. Yager was offended by and objected to the store manager's unwelcome sexual conduct described above. Yager tried to avoid standing near the store manager in order to avoid him touching her. Yager also avoided bending over in front of the store manager in order avoid him making an offensive comment about oral sex to her. In January 2009 Yager complained to Defendant's training manager about the store manager's unwelcome sexual conduct. Despite Yager's complaint to Defendant's training manager, the store manager continued to subject Yager and other female employees to offensive comments and touching until around April 2009.

19. The store manager's offensive sexual conduct was directed toward Defendant's female employees at the restaurant, because of their sex. Much of the unwelcome sexual conduct by the store manager was openly practiced so that other female employees were exposed to sexual harassment and to the sexually hostile work environment at the restaurant. Moreover, Yager and other female employees observed the store manager touch female employees' breasts and make sexual comments to other female employees. Yager also learned directly from some of the restaurant's female employees that the store manager was subjecting them to unwelcome sexual comments and/or touching.

20. The effect of the practices complained of above has been to deprive Minter, Fairweather and Yager and other similarly situated female employees of equal employment

opportunities and otherwise adversely affect their status as employees because of their sex, female.

21.     The unlawful employment practices complained of above were intentional.

22.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Minter, Fairweather, Yager, and other similarly situated female employees.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from maintaining a sexually hostile work environment or from any other employment practice that discriminates on the basis of sex.

B.     Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make Minter, Fairweather, Yager, and other similarly situated female employees whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.     Order Defendant to make Minter, Fairweather, Yager, and other similarly situated female employees whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above above, including but not limited to

emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and/or loss of civil rights, in amounts to be determined at trial.

  F. Order Defendant to pay Minter, Fairweather, Yager, and other situated female employees punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

  G. Grant such further relief as the Court deems necessary and proper in the public interest.

  H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 31st day of August, 2012.

        Respectfully submitted,

        P. DAVID LOPEZ
        General Counsel

        JAMES L. LEE
        Deputy General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        TRACY HUDSON SPICER
        Supervisory Trial Attorney
        Equal Employment Opportunity Commission
        131 M Street, N.E.
        Washington, D.C.  20507

        LYNETTE A. BARNES
        Regional Attorney
        Charlotte District Office
        129 W. Trade Street, Suite 400
        Charlotte, NC  28202

        /s Suzanne Nyfeler_____
        SUZANNE NYFELER
        Virginia Bar No. 40450
        Senior Trial Attorney
        U.S. Equal Employment Opportunity Commission
        Richmond Local Office
        830 East Main Street, Suite 600
        Richmond, VA  23219
        Electronic Mail:  Suzanne.nyfeler@eeoc.gov
        Phone:  (804) 771-2215
        Fax:     (804) 771-2200

        **ATTORNEYS FOR PLAINTIFF**